**Thomas Gregory ALEXANDER, Appellant,**

v.

**The STATE OF TEXAS, Appellee.**

**No. 06–04–00007–CR.**

Court of Appeals of Texas, Texarkana.

Submitted June 9, 2004.

Decided July 1, 2004.

William T. Hughey, Marshall, for appellant.

Al Davis, Asst. Dist. Atty., Marshall, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

A confrontation occurred when Thomas Gregory Alexander emerged from the back door of Johnnie Fancher's home, holding Fancher's shotgun, while Fancher, who had just returned home with his grandson, Wesley Browning,[1] approached the home's back steps, intending to enter. Witnesses [2] agreed that Alexander then directed Fancher to move away from the steps and to go over to Fancher's truck, that Fancher complied, and that shortly thereafter Alexander fled the scene in his own truck. The testimony conflicts concerning the extent to which Alexander threatened Fancher. That conflicting testimony is central to this appeal.

According to Fancher, Alexander aimed Fancher's shotgun at him and threatened to shoot him if he did not back up and get out of Alexander's way. According to Alexander, he held Fancher's shotgun and told Fancher to go over by Fancher's truck, but did not point the gun at Fancher or Browning or threaten them with it. Fancher complied, and Alexander left.

From this incident, Alexander pled guilty to a charge of burglary of a habitation, was convicted of a second charge, aggravated robbery, and was sentenced to

---

1. As Fancher and Browning pulled into Fancher's driveway, an unfamiliar truck was in the driveway, and Alexander was peering out Fancher's bedroom window. Leaving Browning by the truck, Fancher approached the home's rear entrance.

2. Witnesses to the confrontation were Fancher, Alexander, and Browning.

twenty years' confinement on each charge, to run concurrently.

Alexander asserts on appeal that the trial court, trying the aggravated robbery charge, erred in failing to instruct the jury on an allegedly lesser-included offense of deadly conduct and that the evidence is legally and factually insufficient to sustain his conviction. We affirm.

*No Lesser–Included Instruction Required*

■ Alexander was tried for aggravated robbery, an offense defined by Section 29.03 of the Texas Penal Code. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 2003). He asserts the jury should have been instructed on deadly conduct, defined by Section 22.05 of the Texas Penal Code, as a lesser-included offense. *See* TEX. PEN.CODE ANN. § 22.05 (Vernon 2003). We disagree, because deadly conduct is not a lesser-included offense to aggravated robbery, as charged in this case.

Deadly conduct would be a lesser-included offense to aggravated robbery only if "it is established by proof of the same or less than all the facts required to" prove aggravated robbery. TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981). We therefore compare the elements of each offense to determine if the elements of deadly conduct fit within the elements of aggravated robbery.

In the manner Alexander was charged, the elements of aggravated robbery were that, "in the course of committing theft" of Fancher's shotgun "and with intent to obtain or maintain control of" the shotgun, Alexander "intentionally or knowingly threaten[ed] or place[d]" Fancher "in fear of imminent bodily injury or death," while he "use[d] or exhibit[ed] a deadly weapon."

*See* TEX. PEN.CODE ANN. §§ 29.02, 29.03 (Vernon 2003). By contrast, the elements of deadly conduct would be that Alexander "recklessly[3] engage[d] in conduct that place[d]" Fancher "in imminent danger of serious bodily injury." *See* TEX. PEN.CODE ANN. § 22.05.

In this case at least, deadly conduct cannot be a lesser-included offense of aggravated robbery, because at least one element of proof that would be required to establish deadly conduct is not among the facts that must be proved to establish aggravated robbery. Deadly conduct requires proof of *actual imminent danger* of serious bodily injury, while robbery and aggravated robbery require proof of *fear* of bodily injury or death, or proof of a *threat*. Proof of actual imminent danger is required to prove deadly conduct, but not to establish robbery or aggravated robbery. Because the proof required to establish deadly conduct is not "established by proof of the same or less than all the facts required to" prove aggravated robbery, TEX.CODE CRIM. PROC. ANN. art. 37.09, deadly conduct is not a lesser-included offense of the charged offense of aggravated robbery.

Since deadly conduct is not a lesser-included offense here, no instruction on deadly conduct as a lesser-included offense was required. The trial court was correct in overruling Alexander's request for that instruction. We overrule this point of error.

*Evidence Legally and Factually Sufficient*

■ Alexander argues the evidence is legally and factually insufficient to sustain his conviction. He says there is no evidence to show he knew the shotgun was loaded or that he sought to threaten or

---

**3.** Recklessness and danger are statutorily presumed to support a charge of deadly conduct if Alexander "knowingly pointed [the shotgun] at or in the direction of [Fancher] whether or not [Alexander] believed the [shotgun] to be loaded." *See* TEX. PEN.CODE ANN. § 22.05(c) (Vernon 2003).

place Fancher in fear of imminent bodily injury or death. We find the evidence both legally and factually sufficient.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State*, 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

When reviewing a challenge to the factual sufficiency of the evidence to support the conviction, we must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim.App. 2004). There are two conditions under which we may find the evidence to be factually insufficient. First, if the evidence supporting the verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. *Id.* Second, if—when we weigh the evidence supporting and contravening the conviction—we conclude the contrary evidence is strong enough that the State could not have met its burden of proof, we must find the evidence insufficient. *Id.* "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." *Id.* If the evidence is factually insufficient, then we must reverse the judgment and remand for a new trial. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996).

The jury alone judges the credibility of witnesses, the weight to be given their testimony, and the reconciliation of evidentiary conflicts. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Crim.App.1998).

Fancher testified Alexander aimed the shotgun at him and threatened to shoot him if he did not get out of Alexander's way of escape. Fancher also testified he kept the gun loaded and had no reason to doubt that Alexander knew it was loaded. Browning corroborated Fancher's testimony, with the exception of the loaded gun. Todd Smith, an investigator with the Harrison County Sheriff's Office, testified that, when the shotgun was recovered, it was fully loaded with three shells, one in the chamber ready to fire, and two in the magazine. Smith also testified he did not know *when* the gun had been loaded.

Alexander testified he burglarized Fancher's home and took some old coins and a shotgun. Alexander denied pointing the shotgun at Fancher, but acknowledged that, while Alexander held the shotgun, he directed Fancher to move over beside Fancher's truck. Alexander also confirmed that Fancher was probably coming to remove Alexander from Fancher's house, that the two faced each other at the rear of the house, and that Fancher let him go probably because Alexander had the shotgun in his possession, but again denied pointing the shotgun at Fancher. Alexander admitted that he exhibited the shotgun, that it is a deadly weapon, and that he supposes Fancher was afraid of his actions. Alexander denied the shotgun was loaded. Alexander indicated he supposed Fancher would have stopped him from getting away except for Alexander having the shotgun. Alexander denied that he used the shotgun to try to escape or that he aimed it at anyone, but acknowledged that, had he been in Fancher's shoes, he would have been scared.

While there is conflicting evidence about whether the gun was loaded and the extent to which there was a threat made or im-

plied by Alexander, the jury was entitled to resolve those conflicts and make reasonable inferences from the above evidence. Therefore, we find the evidence is legally and factually sufficient to support the conviction.

We affirm the trial court's judgment.